AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA Seth Schlessinger)

# UNITED STATES DISTRICT COURT
для the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>Carl Masters<br><br>*Defendant(s)* | )<br>)<br>) Case No. 18-1155-M<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __1/9/17 - 7/18/18__ in the county of __Bucks__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(g) | Engaging in Child Exploitation Enterprise. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel J. Johns, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/18/2018

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Lynne A. Sitarski, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Daniel J. Johns, being first duly sworn, hereby depose and state as follows:

1. I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) in Philadelphia, Pennsylvania. I am thus a "federal law enforcement officer," as defined by the Federal Rules of Criminal Procedure. I have been employed as a Special Agent since March 2007. I am presently assigned to the Philadelphia Division's Crimes Against Children squad, which investigates sex trafficking of children and prostitution investigations, child pornography, and kidnappings, among other violations of federal law. I have gained experience through training at the FBI Academy, various conferences involving crimes against children, and everyday work related to conducting these types of investigations.

2. This affidavit is being made in support of the issuance of the attached criminal complaint charging Carl MASTERS with engaging in a child exploitation enterprise, in violation of Title 18, United States Code, Section 2252A(g).

3. The statements in this Affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause in support of issuance of the attached complaint, I have not included each and every fact known to me concerning this investigation, but rather only those facts that I respectfully submit are necessary in order to establish probable cause.

## STATUTORY AUTHORITY

4. Title 18, United States Code, Section 2252A(g) prohibits any person from engaging in a child exploitation enterprise. In turn, Title 18, United States Code, Section 2252A(g)(2)

1

provides that a person engages in a child exploitation enterprise within the meaning of the section if the person violates (among other portions of Title 18) Chapter 110 of the United States Code, as part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons. Chapter 110 of the United States Code prohibits, among other offenses, the production of child pornography (18 U.S.C. § 2251(a)); the advertisement of child pornography (18 U.S.C. § 2251(d)); the distribution or receipt of child pornography (18 U.S.C. § 2252(a)(2)); and the possession of child pornography (18 U.S.C. § 2252(a)(4)(B)). Each of the aforementioned violations is a felony offense.

**PROBABLE CAUSE**

5. On or about May 23, 2017, an FBI online covert employee (OCE) was investigating the production of child pornography on the mobile app "live.me"[1] and browsed to a website called "8ch.net." On 8ch.net, the OCE observed a link to an URL permitting browser-based access to Service A, a computer-based communication service described further below. Next to the link was an image that depicted two females who appeared to be children wearing bikinis.

6. The OCE clicked on the above link and was re-directed to another URL to a website operated by Service A-2. This particular website was entitled "Service A-1," and the title was accompanied by a thumbnail image of two minor female children kissing each other.

---

[1] Live.me is a social media platform for sharing, creating and viewing live streaming videos. Live.me users can stream live video from mobile platforms like Apple iOS or Google Android. Videos streamed from Live.me users can be viewed through the Live.me mobile applications or an internet browser.

[2] Service A, Service A-1, and similar terms, as well as Username 1 and similar terms, are pseudonyms used in this affidavit in lieu of the actual terms in order to protect the integrity of an ongoing investigation.

2

7. Service A owns and operates a free-access all in one voice and text chat application and website with the same name that can be accessed over the web. A user creates a Service A account and can then communicate with other Service A users.

8. Service A users can exchange private messages between each other, participate in chat discussions, and voice chat. Service A users can also create chat rooms, which functions as message boards that can be accessed only by Service A users who have an invitation link. Service A-1, mentioned above, is one such chat room on Service A. Within these chat rooms, users can set up different sub-rooms wherein users can type written text, including links to files stored on external file-storage sites, and also upload files under a particular size limit, which can be viewed by all users of the sub-room. Service A users can share files larger than the limit allowed by providing hyperlinks to file sharing websites. Service A chat rooms can have one or more moderators. Moderators have the ability to manage other users, including but not limited to removing users from the chat rooms, elevating users hierarchically, and granting users additional permissions. The moderators of a chat room can categorize users of the chat rooms into hierarchical groups with customized labels and can configure those groups to give users in each group different levels of access.

9. The OCE's review of the Service A-1 chat room revealed that the vast majority of its content consisted of discussions about using web cameras and social-media applications to obtain sexually-explicit images and videos of minor children; images and videos of minor children exposing their vaginas, which at times were uploaded to the Service A-1 chat room and its sub-rooms; and links to download child pornography images and videos from external file-storage sites. Most of the children viewed by the OCE appeared to be approximately between the ages of 11 and 17 years old. The Service A-1 page also included some discussion of adults engaging in

sexual activity via web camera. However, the majority of the activity focused on the depiction of minors engaged in sexually explicit activity on web cameras. For example, in the course of a discussion in the one sub-room of Service A-1 regarding the merits of utilizing virtual private network (VPN) technology to mask users' IP address and identity, Username 1 commented on April 15, 2017: "Just the fact that we're all hanging in here, which is a chatroom where underaged sexual content is shared around is enough reason for one to get a VPN." User name 1 continued, stating: "Fuck when you download something from dropfile Your ISP can see what you downloaded What if govt authorities read ISPs logfiles."

10. Based on the OCE's undercover observations on Service A-1, a federal search warrant was issued, on or about July 10, 2017, by the Honorable David R. Strawbridge, United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to Service A-1. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of Service A-1, the content of some text chats occurring on Service A-1, and some private messages sent by users of Service A-1.

11. The Service A-1 chat room was ultimately shut down by Service A. Members of the Service A-1 chat room proceeded to open additional similar chat rooms on Service A, including: Service A-2, Service A-3, Service A-4, and Service A-5. The OCE gained access to Service A-3, Service A-4, and Service A-5. The OCE observed each of these chat rooms contained many of the same users as Service A-1 and were operated for the purpose of discussing, obtaining, and distributing child exploitation material including child pornography files. Service A-5 is the only of the aforementioned Service A chat rooms that is still operating.

12. Based on the OCE's undercover observations on Service A-2, Service A-3, Service A-4, and Service A-5, a second federal search warrant was issued, on or about November 17, 2017,

by the Honorable Linda K. Caracappa, Chief United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to the aforementioned chat rooms. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of those chat rooms, the content of certain text chats occurring in the chat rooms, and some private messages sent by users of those chat rooms.

13. The OCE observed a user of Service A-1 with the online name "Username 7." A review of the search warrant return from Service A and undercover recordings by the OCE located, among other activity, the following activity, each involving a video or image that I have reviewed and that, in my opinion, constitutes a depiction of a minor engaged in sexually explicit conduct as defined by federal law:

    a. On October 15, 2017, Username 7 posted the link yolo-15080765477264720366-20171015220919.m3u8 in Service A-5. The OCE utilized this information to download this video file from live.me. The video depicted a minor female exposing and touching her vagina. The minor female appeared to be between the ages of 12 and 15.

    b. On October 17, 2017, Username 7 posted a file entitled "f3fcf75daefd7bfcb6a18de35f82d9fa-303607201.gif" in Service A-5. The OCE downloaded and viewed this file which depicted a minor female masturbating and exposing her vagina. The minor female appeared to be between the ages of 15 and 17.

    c. On October 19, 2017, Username 7 posted a file entitled "leslyn_13.jpg" in Service A-5. The OCE downloaded and viewed this file which depicted a minor female child exposing her vagina and masturbating. The minor female appeared to be between the ages of 14 and 17.

14. Many of the depictions posted by Username 7 depicted female children who

appeared to be in their mid to late teens. A cooperating defendant, who was a user of Service A-1 informed FBI agents that Service A chat rooms the cooperating defendant was a member of, like such as Service A-1, specifically targeted minor children who had reach puberty, but were not yet 18 years old.

15. On December 14, 2017, Username 7 posted Service A-5: "I once tried to catfish this internet famous chick and I fucked up bc I said my cf was 16 bc I though she was around 16 17, turns out she was 20 and didn't want to catch a CP case so she would nt send pics::(" On January 28, 2017, Username 7 asked other Service A-1 users if there was "a vola for 14-17 age win?"

16. Records from Service A show that user "Username 7" accessed Service A servers using a particular IP address on September 18, 2017. The FBI sent a subpoena to AT&T Internet Services who responded on October 17, 2017. AT&T's records showed that the subscriber of that IP Address on September 18, 2017 was Carl MASTERS, 937 Pennsylvania Street, Lawrence, KS 66044.

17. On July 18, 2018, a federal search warrant was executed at 937 Pennsylvania Street, Lawrence, KS 66044, MASTERS' residence. At the time the search warrant was executed, MASTERS agreed to speak with law enforcement officers. MASTERS admitted to being a member of Service A and that he utilized Username 7. MASTERS stated that Service A discontinued his use of Username 7 approximately 2 days ago and that he created a new Username to access Service A. While accessing Service A, MASTERS sent links to other users that contained images and videos of sexually explicit conduct of minors between the ages of "14 and 25" years of age. MASTERS admitted to being sexually interested in that age group of females. MASTERS admitted to posing as a 16 year old female in order to convince minor females to engage in sexually

explicit conduct. MASTERS also admitted to using other forums to talk to teenage females, and that he requested that the females perform certain acts (and that the females did perform the requested acts), although he declined to specify the nature of the acts. During the execution of the search warrant, MASTERS had two laptops up and running and Service A was running on at least one of the laptops.

## VENUE

18. The child exploitation enterprise in which MASTERS engaged, as described above, extended at all relevant times to the Eastern District of Pennsylvania. The enterprise was open to members from anywhere in the world, and the child pornography material disseminated by the enterprise was made available to any person able to access Service A, including from the Eastern District of Pennsylvania. Further, the OCE's activities over the various Service A chat rooms comprising the enterprise were conducted in the Eastern District of Pennsylvania. Finally, the investigation has revealed the participation of at least one member of the enterprise who lived in the Eastern District of Pennsylvania and participated in the enterprise from the Eastern District of Pennsylvania, from as early as July 2016 until that member's arrest by federal authorities in February 2018.

## CONCLUSION

19. Based upon the information above, I respectfully submit that there is probable cause to believe that MASTERS has engaged in a child exploitation enterprise, in violation of Title 18, United States Code Section 2252A(g), in that MASTERS has violated Chapter 110 of Title 18 of the United States Code as part of a series of felony violations involving three or more separate incidents and more than one victim, and has committed those offenses with three or more other

persons. I therefore further respectfully request that the Court issue the attached complaint and warrant charging MASTERS with that offense.

Daniel J. Johns
Special Agent, Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 18th DAY
OF JULY, 2018.

HON. LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

8